**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PETER JOHN PASCALLI, | : | CIVIL ACTION NO. 06-4593 (MLC) |
|  | : |  |
|     Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
|     v. | : |  |
|  | : |  |
| O'GRADY, et al., | : |  |
|  | : |  |
|     Defendants. | : |  |

**COOPER, District Judge**

Pro se plaintiff, Peter John Pascalli, brought this action, pursuant to 42 U.S.C. § 1983, against Dr. O'Grady ("O'Grady") and Theodore J. Hutler, Jr. ("Hutler"), on September 26, 2006.  (Dkt. entry no. 1.)  The summons was returned unexecuted with respect to O'Grady.  (Dkt. entry no. 4.)  The Court allowed plaintiff to proceed in forma pauperis.  (Dkt. entry no. 9.)  Hutler and Ocean County Jail ("OCJ") (collectively, "moving defendants") move for summary judgment in their favor pursuant to Rule 56(c).  (Dkt. entry no. 17.)  The Court, for the reasons stated herein, will (1) grant the motion for Hutler, (2) deny as moot the motion as to OCJ, and (3) issue an order to show cause as to why the complaint should not be dismissed insofar as it is asserted against O'Grady.

**BACKGROUND**

Plaintiff broke both of his ankles in a motor vehicle accident in December 2005.  (Dkt. entry no. 1, Compl., at ¶ 6.)

In January 2006, during his incarceration at OCJ, a doctor recommended that he see an ankle specialist.  (Dkt entry no. 21, Pl. Br., Ex. 4, 1-11-06 Medical Report.)  In March 2006, after plaintiff filed a grievance with OCJ concerning the casts on both of his legs, the casts were removed.  (Compl., at ¶ 6; dkt. entry no. 17, Def. Br., Ex. A, 3-23-06 Inmate Grievance Form.)  On April 14, 2006, an MRI was taken of plaintiff's right ankle, finding, inter alia, (1) a "fracture through the midportion of the talus"[1], (2) "[an] osteochondral lesion of the lateral talar dome with signal changes in the underlying marrow suggesting possible superimposed osteonecrosis"[2], (3) "diffuse circumferential soft tissue edema"[3], and (4) "small ankle joint effusion."[4]  (Dkt. entry no. 19, Def. Reply Br., Ex. C, MRI Report.)  Plaintiff also attended physical therapy seven times from April 2006 through May 2006.  (Def. Br., Ex. A, 8-16-06 Inmate Grievance Form.)

---

[1] The "talus" is the ankle bone articulating the tibia, fibula, calcaneus, and navicular bone.  Taber's Cyclopedic Medical Dictionary 1946 (Clayton L. Thomas ed., 17th ed. 1993).

[2] "Osteochondral" pertains to bone and cartilage.  Id. at 1381.  "Talar" refers to the ankle.  Id. at 1945.  "Osteonecrosis" refers to the generalized death of bone tissue rather than isolated areas of necrosis.  Id. at 1384.

[3] "Edema" is a condition in which the body tissues contain an excessive amount of tissue fluid.  Id. at 606.

[4] "Joint effusion" is defined as increased fluid within a joint cavity.  Id. at 609.

2

Plaintiff filed a second grievance on June 21, 2006, noting, inter alia, that he had not yet seen an ankle specialist. (Compl., 6-21-06 Inmate Grievance Form.)  Plaintiff filed two additional grievances on August 16, 2006 and August 17, 2006, again requesting to see an ankle specialist, and stating that he needed surgery on his ankle.  (Compl., 8-16-06 Inmate Grievance Form, 8-17-06 Inmate Grievance Form.)

Plaintiff alleges that the defendants (1) were deliberately indifferent to his medical needs in violation of the Eighth Amendment of the United States Constitution, and (2) violated his "civil rights to due process" by failing to respond to his grievances.[5]  (Compl., at ¶¶ 4, 6; Pl. Br., at 6-8.)  The moving defendants move for summary judgment as to all claims on the grounds that (1) plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), (2) they were not deliberately indifferent to plaintiff's medical needs, (3) plaintiff has not shown he has an Eighth Amendment claim against Hutler as warden of the jail, and (4) plaintiff does not have a due process right to the OCJ inmate grievance process.  (Def. Br., at 4-7, 8-13, 14-16; Def. Reply Br., at 7.)

---

[5] It does not appear that plaintiff is asserting any claims under state law.  (See Compl.; Pl. Br.)

3

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Id.  The summary judgment movant bears the initial burden of
showing that there is no genuine issue of material fact. Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has
met this prima facie burden, the non-movant "must set forth
specific facts showing that there is a genuine issue for trial."
Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence
that raises a genuine issue of material fact and may not rely on
mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."  Anderson, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the

4

[non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II. Claims Asserted Against OCJ

The complaint does not name OCJ as a defendant. (See Compl.) It appears that OCJ was incorrectly listed on the docket as a defendant in this action. As a result, the moving defendants' motion for summary judgment as to OCJ will be denied as moot.[6]

---

[6] Even if OCJ had been named as a defendant, it would not be liable here. There are three situations where the Court should hold a municipal entity, which established a policy or acquiesced in a custom, liable under Section 1983. See Natale v. Camden County Corr. Fac., 318 F.3d 575, 584 (3d Cir. 2003). The first is where the appropriate government officer or entity promulgates

## III. Plaintiff's "Due Process" Claims

Plaintiff states that his "civil rights to due process" were violated by the failure to respond to his grievances. (Compl., at ¶ 6.) Prisoners, however, do not have a constitutional right to prison grievance procedures. <u>Travillion v. Leon</u>, No. 06-2136, 2007 WL 2687316, at *2 (3d Cir. Sept. 14, 2007). Thus, to the extent that plaintiff is asserting a constitutional claim with regard to the Inmate Grievance Procedure at OCJ, it is not "independently actionable" as a constitutional claim. <u>See</u> <u>Heleva v. Kramer</u>, 214 Fed.Appx. 244, 246 (3d Cir. 2007).

## IV. Plaintiff's Claims Against O'Grady

### A. Federal Rule of Civil Procedure 4(m)

It does not appear that plaintiff has served O'Grady within 120 days of filing the complaint, as the summons issued on December 12, 2006 was returned unexecuted on January 5, 2007 because "no Dr. O'Grady is employed for or has recently worked for the Ocean County Jail." (<u>See</u> dkt. entry no. 4.) <u>See</u> Fed.R.Civ.P. 4(m). It is the plaintiff's burden to assure that service is accomplished, <u>e.g.</u>, to seek to compel OCJ to (1)

---

a generally applicable statement of policy and the subsequent act complained of is an implementation of that policy. <u>Id.</u> A municipal entity may also be held liable if federal law has been violated by an act of the policymaker itself. <u>Id.</u> Last, there may be municipal liability where the policymaker was deliberately indifferent to an obvious need to take some action to control the agents of the government. <u>Id.</u>

accept service for O'Grady, (2) advise the Court of O'Grady's whereabouts, or (3) identify the proper OCJ medical employee to be named as defendant here, and request the Court to provide the information to the U.S. Marshals Service for service.

It appears that plaintiff's claims brought against O'Grady, or a proper OCJ medical defendant, based upon the current record would go forward, as discussed <u>infra</u>. Therefore, the Court will issue an order to show cause as to why the complaint should not be dismissed insofar as it is asserted against O'Grady.

**B. The Exhaustion Requirement under the PLRA**

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[7] The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes they are ineffective, or (2) the available administrative process cannot grant the desired remedy. <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001); see <u>Porter v.</u>

---

[7] Failure to exhaust administrative remedies is an affirmative defense under the PLRA. <u>Jones v. Block</u>, 127 S.Ct. 910, 921 (2007).  The defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." <u>Kounelis v. Sherrer</u>, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (citing <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).  The moving defendants have properly raised the affirmative defense by asserting it in their motion for summary judgment.  (Dkt. entry no. 17.)

Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory," (2) "[a]ll available remedies must . . . be exhausted," and (3) the remedies need "not meet federal standards, nor must they be plain, speedy, and effective."). Therefore, to comply with the PLRA, a prisoner must properly exhaust administrative remedies as a precondition to bringing an action in federal court, or risk procedural default. Bailey-El v. Fed. Bur. of Prisons, No. 06-4807, 2007 WL 2461764, at *1 (3d Cir. Aug. 29, 2007); Jackson v. Ivers, No. 04-1977, 2007 WL 2261552, at *3 (3d Cir. Aug. 8, 2007); Spruill, 372 F.3d at 222.

The PLRA's exhaustion requirement applies to all actions brought by inmates "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Jackson, 2007 WL 2261552, at *3; Spruill, 372 F.3d at 222.[8] "[C]ompliance with the administrative remedy

_____

[8] The PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

scheme will be satisfactory if it is substantial." <u>Nyhuis v. Reno</u>, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner must bring a grievance to the attention of the appropriate prison official so that the official has an opportunity to respond to the grievance before the prisoner resorts to the courts. <u>Spruill</u>, 372 F.3d at 227; <u>see Porter</u>, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Moreover, after filing an initial complaint, the prisoner must carry the grievance through any available appeals process. <u>Nyhuis</u>, 204 F.3d at 67. Thus, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. <u>Spruill</u>, 372 F.3d at 232.

A failure to exhaust administrative remedies, however, may be excused in some circumstances. <u>Ramos v. Smith</u>, No. 04-249, 2005 WL 3054291, at *5-*6 (E.D. Pa. Nov. 14, 2005) (pointing out that Third Circuit Court of Appeals "has concluded that dismissal or summary judgment under [section] 1997e(a) is inappropriate when prison officials have misled or otherwise precluded the inmate from filing or exhausting prison grievance procedures."). For example, it may be excused if "prison officials precluded

9

[the prisoner] from filing administrative requests or appeals so that [the] defendant is estopped from raising exhaustion as an affirmative defense." See id. at *6.  Also, if "the procedures were unclear," that may create "special circumstances that justify excusing the exhaustion requirement."  See id.

The OCJ Rulebook includes a specific provision laying out an "Inmate Grievance Procedure."  (Def. Br., Ex. B, OCJ Rulebook.) The Inmate Grievance Procedure consists of three steps.  (Id.) Informal resolution between the inmate and staff member is first encouraged.  (Id.)  If that process is unsuccessful, the inmate may obtain an "Inmate Grievance Form" from a corrections officer. (Id.; Pl. Br., Ex. 2, Inmate Grievance Form.)  Upon completion, the inmate must submit the Inmate Grievance Form to an officer, who will provide a signed receipt.  (OCJ Rulebook.)  Section II of the Inmate Grievance Form indicates that the grievance has been received by the Chief of Security and provides a space to be filled out indicating to whom the claim was referred for investigation.  (See Inmate Grievance Form.)  Section III provides spaces for "Findings" and "Recommendations," to be filled out by an "Investigator" of the inmate's grievance.  (See id.)  The grievance shall, if feasible, be processed within seven days from the date the incident prompting the grievance occurred. (OCJ Rulebook.)  OCJ staff has up to seven business days to act on the matter and provide a written response.  (Id.)

10

If an inmate is dissatisfied with the response to the grievance, the last step is an appeal to the Chief of Security or Chief of Support within five days of receipt of the written response. (OCJ Rulebook.)  The inmate may obtain an appropriate form from a staff person. (Id.)  The inmate must then fill out Section IV on the Inmate Grievance Form. (See Def. Reply Br., at 3; Inmate Grievance Form.)  The appeal also must include a completed copy of the initial complaint and the written response to the inmate. (OCJ Rulebook.)  The Chief of Security or Chief of Support must forward a receipt of the appeal and reply within seven business days from receipt. (Id.)

Plaintiff does not deny that he received an OCJ Rulebook, or the existence of the Inmate Grievance Procedure. (Pl. Br., at 3-5.)  He contends, however, that his grievance forms have been ignored, and that the grievance forms he submitted to prison officials at OCJ were returned to him with no findings written on them. (Compl., at ¶¶ 5, 6; Pl. Br., at 3-4.)

The OCJ Rulebook states that prison officials must provide an inmate with a "written response" to a grievance, which an inmate may appeal, as discussed supra. (OCJ Rulebook.)  The record does not show, however, that prison officials informed plaintiff of any findings they may have made. (See Def. Br., Def. Reply Br.)  The grievance forms returned to plaintiff only indicate that his grievances were received by the Chief of Security for investigation and referred to "Medical."  (Compl.,

11

6-21-06 Inmate Grievance Form, 8-16-06 Inmate Grievance Form, 8-17-06 Inmate Grievance Form.)  Further, although there are grievance forms in the record that do have findings written on them, they do not indicate whether plaintiff received these findings, as the "Copy returned to Inmate" spaces on these grievance forms are blank.[9]  (Def. Br., Ex. A, 3-26-06 Inmate Grievance Form, 6-21-06 Inmate Grievance Form, 8-16-06 Inmate Grievance Form.)  Moreover, the OCJ Rulebook does not state that an inmate may appeal from a response lacking any findings as to a grievance, rather than appealing a response to a grievance after the inmate is informed of findings made by an investigator.  (See Def. Br., Ex. B, OCJ Rulebook.)

A failure to exhaust may be excused in some circumstances, as discussed supra.  See Ramos, 2005 WL 3054291, at *6.  It is unclear here whether plaintiff was informed of the findings prison officials made with regard to his grievances, or whether plaintiff could have appealed from the Inmate Grievance Forms returned to him that lacked findings.  Thus, should a proper defendant be served, the Court would require more information with regard to plaintiff's grievances and OCJ's Inmate Grievance Procedure to decide whether plaintiff failed to exhaust his administrative remedies.  See id.

---

[9]  There are no findings written on the 8-17-06 Inmate Grievance Form submitted by the moving defendants. (Def. Br., Ex. A, 8-17-06 Inmate Grievance Form.)

12

**C. Section 1983 and the Eighth Amendment**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence", which must be made with appropriate particularity.

13

Id.; see Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (dismissing Section 1983 claims because there were no allegations that the defendants were personally involved through either direction or knowledge and acquiescence with the alleged wrongs); Jetter v. Beard, 130 Fed.Appx. 523, 526 (3d Cir. 2005) (dismissing Section 1983 claims against supervisory defendants because plaintiff did not allege any facts to support a conclusion that those defendants had personal involvement in the medical treatment he received).

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633. Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) there is a serious medical need, and (2) prison officials were deliberately indifferent to this need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A medical need is considered serious if it is one that either a physician would diagnose as requiring treatment or a lay person would easily recognize as

14

needing medical attention.  <u>Monmouth County Corr. Inst'l Inmates
v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  Also, if denial or
delay causes "unnecessary and wanton infliction of pain", a life-
long handicap, or permanent loss, the medical need is considered
serious.  <u>Id.</u>

     "Where prison authorities deny reasonable requests for
medical treatment . . . and such denial exposes the inmate 'to
undue suffering or the threat of tangible residual injury,
deliberate indifference is manifest.'"  <u>Lanzaro</u>, 834 F.2d at 343
(internal citations omitted).  Deliberate indifference is also
manifest when prison officials "erect arbitrary and burdensome
procedures that result in interminable delays and outright
denials of medical care to suffering inmates."  <u>Id.</u> at 347
(internal quotations and citations omitted).  However, claims of
negligence or malpractice are not sufficient to establish
"deliberate indifference".  <u>Rouse</u>, 182 F.3d at 197; <u>see</u> <u>White v.
Napoleon</u>, 897 F.2d 103, 106 (3d Cir. 1990) ("Mere medical
malpractice cannot give rise to a violation of the Eighth
Amendment.").  Thus, in order to state a cognizable claim for
failure to provide medical care in violation of the Eighth
Amendment, a prisoner must allege acts or omissions that are
sufficiently harmful to offend "evolving standards of decency".
<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

Plaintiff argues that there was deliberate indifference to his medical needs in violation of the Eighth Amendment because, inter alia, (1) his grievances concerning his need to see an ankle specialist and have surgery on his ankle were ignored, and (2) he was transferred from the medical unit to the general population unit of the OCJ.  (Compl., at ¶ 6, Pl. Br., at 6-8.) The only documents on the record that show what decisions were made concerning plaintiff's grievances are grievance forms unsupported by affidavits.  (Def Br., at 12; see Def. Br., Ex. A, 3-23-06 Inmate Grievance Form, 6-21-06 Inmate Grievance Form, 8-16-06 Inmate Grievance Form, 8-17-06 Inmate Grievance Form.) Moreover, the Court does not have plaintiff's complete medical record from OCJ to examine the medical treatment, if any, that was provided to plaintiff for his ankle.  (See Def. Br.; Def. Reply Br.)  Thus, should a proper defendant be served, the Court would require additional submissions to show what actions were taken to address plaintiff's grievances, and what medical treatment was provided to plaintiff for his ankle.

**V.  Claims Asserted Against Hutler**

Plaintiff alleges Eighth Amendment claims against defendant Hutler merely "as overseer" of OCJ, and because Hutler is "responsible for his subordinates."  (Compl., at ¶ 4; Pl. Br., at 4.)  As discussed supra, civil rights liability under Section 1983 cannot be predicated solely on the doctrine of respondeat

16

superior; personal involvement in the alleged wrong-doing must be shown.  Rode, 845 F.2d at 1207.  Plaintiff has neither shown nor argued that Hutler was personally involved in the medical treatment he received.  (See Compl.; Pl. Br.)  Therefore, Hutler is entitled to summary judgment on plaintiff's Section 1983 claims under the Eighth Amendment here.  See Rode, 845 F.2d at 1207.

### CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion in favor of Hutler, (2) deny as moot the motion as to OCJ, and (3) issue an order to show cause why the Court should not dismiss the complaint insofar as it is asserted against O'Grady. The Court will issue an appropriate order, judgment, and order to show cause.

        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** October 22, 2007

17